UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

    BOYCE HYDRO, LLC, et al.

          Debtors.[1]

Case No. 20-21214-dob
Chapter 11 Proceeding
Hon. Daniel S. Opperman

_____/

OPINION REGARDING LIQUIDATING TRUSTEE'S MOTION TO ENFORCE
ORDER CONFIRMING PLAN AGAINST THE STATE OF MICHIGAN;
THE DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY;
AND THE DEPARTMENT OF NATURAL RESOURCES

Scott Wolfson, the Liquidating Trustee of the Boyce Hydro Liquidating Trust, filed a motion to enforce certain plan conditions on the State of Michigan, the Department of Environment, Great Lakes, and Energy (EGLE), and the Department of Natural Resources (DNR). Numerous claimants support the relief requested by the Trustee; the State of Michigan, the DNR and EGLE oppose this relief.

Jurisdiction

This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334 and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: (i) Boyce Hydro, LLC (6694), Case No. 20-21214 and (ii) Boyce Hydro Power, LLC (3034), Case No. 20-21215.

1

Introduction

A.  Pre-Bankruptcy Events

The Debtors in these cases, Boyce Hydro LLC and Boyce Hydro Power, LLC, along with related entities, owned and operated four dams in Gladwin and Midland Counties. The dams created or enhanced four lakes along the Tittabawassee and Tobacco Rivers and generated electricity. By the end of the 20th Century, the dams needed repair and maintenance that the Debtors and related entities either could not afford or would not make. The Federal Energy Regulatory Commission (FERC) ultimately withdrew federal approval, which had the effect of putting regulatory authority with the DNR and EGLE. After investigation and review, each department took action.

B.  2018 and 2019 Alleged Actions

The DNR and EGLE have alleged that the Debtors and others lowered water levels in Wixom Lake by seven feet in the fall of 2018 and in doing so imperiled certain aquatic wildlife. Midland and Gladwin Counties each approved resolutions to seek court authority to require the lake levels to rise to previous levels and to create an entity, the Four Lakes Task Force ("FLTF"), to purchase the dams and other property.

In early 2019, the Counties and FLTF filed lawsuits to prohibit the lowering of the lake levels and maintain certain lake levels. Public meetings were held and other methods were used to gather input. After a public hearing, the court ordered the lake levels to be returned to previous traditional non-winter levels with an allowance of a three feet reduction in winter months. The Wixom Lake levels were restored but then lowered more than three feet in the fall of 2019.

C.    2020 Events

With the lake level lowered, the DNR performed aquatic wildlife surveys and concluded that thousands, if not millions, of freshwater mussels were killed. In particular, the drawdown, refilling, and drawdown of levels caused the mussels to be lured into watered areas, and then be left with insufficient water to survive the winter. The DNR noted a deadly effect on snuffbox mussels, a state and federal endangered species. Accordingly, the DNR and EGLE filed a complaint in the Ingham County Circuit Court seeking redress for these losses and damages ("Ingham County Action").

The Debtors and related entities began to raise the lake levels in spring 2020. By May 2020, the levels returned to the traditional levels as approved by the state court. On May 19, 2020, the Edenville Dam failed, followed by a partial failure of the Sanford Dam. As a result, the downriver communities of the Village of Sanford, City of Midland, and adjoining areas were flooded and thousands of humans displaced and substantial property damage was sustained.

The DNR and EGLE turned to court action, this time in the District Court for the Western District of Michigan, claiming that the Debtors, Lee Mueller, Boyce Michigan, LLC, WD Boyce Trust 2350, WD Boyce Trust 3649 and Boyce Trust 3650 violated various federal and state environmental laws under the Michigan Natural Resources and Environmental Protection Act, M.C.L. § 324.101 *et seq.* ("Western District Action").

D.    Bankruptcy Activity

The Debtors filed their Chapter 11 petition on July 31, 2020 and the Court held numerous hearings and conferences by telephone throughout 2020. By late 2020, through Herculean efforts of all counsel, the Debtors were within striking distance of confirming a Chapter 11 Plan. On February 25, 2021, this Court entered a Non-Consensual Order Confirming Debtor's Fourth

3

Modified Joint Consolidated Chapter 11 Plan of Liquidation. This Order approved the creation of the Boyce Hydro Liquidating Trust and appointed Mr. Wolfson as the Liquidating Trustee.

E.     Specific Terms of the Plan and Trust

The Plan and the Trust Agreement were products of lengthy and thoughtful negotiations and control the relationship between and among the Debtors, the related entities, the Liquidating Trustee, claimants and creditors. Initially, the Plan defined a "Claim" as:

> 19.     The Plan defines "Claim" to mean "a 'Claim' (as defined in section 101(5) of the Bankruptcy Code) asserted against the Debtors (including as substantively consolidated hereunder), including, but not limited to: (a) any right to payment against, whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance, if such performance gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

Next, the Plan enjoins a claim holder from:

> ". . . commencing, conducting or continuing in any matter, whether directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Liquidating Trust or any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor in any interest to, the foregoing Liquidating Trust, or any property of any such transferee or successor."

The Plan also contains a Channeling Injunction that enjoins "pursuing or seeking to pursue, by any manner or means any Covered Claim against the Insurer Parties and Insurance Settlement Released Parties". This provision was necessary to allow certain insurers of the Debtor and various parties to tender the amount of insurance coverage to the Liquidating Trustee and to meet the contractual obligations of each insurer to its insureds and related entities. This language does not apply to the Ingham County Action, but does apply to the Western District Action and in particular

to Ms. Mueller and Mr. Hultberg, who are named related parties and who contributed funds for settlement.

The State of Michigan, the DNR and EGLE participated in the Plan and Trust negotiations and were concerned their interests would be protected, particularly the right to enforce police powers. To that end, the following language was included:

> J. Reservation of Rights of the United States and State of Michigan
>
> Notwithstanding any other provision of this Plan or the Insurance Settlement if it is approved, nothing shall release, enjoin, or otherwise bar (a) any police or regulatory action by the United States or the State of Michigan; (b) any action to exercise the power of eminent domain and any related or ancillary power or authority of the United States or the State of Michigan; or (c) any environmental liability to the United States or the State of Michigan that the Debtors, any successors thereto, or any other Person or Entity may have as an owner or operator of real property, in each (a)-(c), that is not a Claim. ("Reservation of Rights")

F. Post-Confirmation Events

After confirmation of the Plan, Mr. Wolfson assumed the duties of the Liquidating Trustee. The DNR and EGLE reinstated actions in Ingham County and the Western District, which caused the Liquidating Trustee to request informally that these actions stop as to the Debtor, related entities, and Released Parties. After a brief hiatus, the DNR and EGLE moved in each court, prompting the Liquidating Trustee to file the instant motion with a response by the DNR and EGLE, as well as supportive pleadings by numerous claimants and others.

G. Oral Argument

The Court heard oral arguments on the Liquidating Trustee's Motion on April 27, 2021. At this hearing, the DNR and EGLE acknowledged certain requests for relief in the Ingham County Action and the Western District Action did not qualify for the police power exception, especially the requested relief of a money judgment, imposition of fines, and reimbursement of expenses.

The DNR and EGLE offered to provide copies of proposed amended complaints, and did so on May 28, 2021.

The Court continued oral argument to June 3, 2021 and again to August 11, 2021 to allow the parties time to study the amended complaints and file amended pleadings.

H.  The Amended Complaints of the DNR and EGLE

   1.  The Ingham County Action

The named Defendants in the action are:

> Lee Mueller
> Boyce Michigan, LLC
> Edenville Hydro Property, LLC
> Boyce Hydro Power, LLC
> Boyce Hydro, LLC
> WD Boyce Trust 2350
> WD Boyce Trust 3649
> WD Boyce Trust 3650
> Stephen Hultberg
> Michele Mueller

Initially, the DNR and EGLE requested the following relief:

   a.  A money judgment exceeding $25,000;

   b.  A declaration that Defendants violated Parts 17, 31, 301, 303, 315, 401, and 487 of the NREPA, as well as the common law doctrines of conversion, public nuisance, and unjust enrichment;

   c.  Civil fines;

   d.  A declaration that Defendants' violations of the common law and NREPA have created an ongoing public nuisance and an order requiring the abatement of the public nuisance;

   e.  A declaration that Defendants have been unjustly enriched by being temporarily relieved of their obligations to address the public harms they have a duty to address, and an order requiring Defendants to reimburse the State the expenses the State has made to fulfill the duty owed by Defendants;

   f.  An order requiring Defendants to restore and repair the damage they caused;

g. The relief authorized by MCL 324.1704, MCL 324.3115, MCL 324.30112, MCL 324.30316, and MCL 324.31525;

h. An order reimbursing the State's enforcement expenses, including litigation expenses and attorney's fees;

i. Any other relief the Court considers appropriate.

The Amended Complaint restated the requested relief to the following:

a. A declaratory judgment finding that Defendants violated the Natural Resources and Environmental Protection Act and adjudicating the impact of Defendants' unlawful actions on Michigan's natural resources and the public trust in those resources;

b. An injunction forbidding Defendants from violating the law in the future to the extent any Defendants continue to or plan to operate in Michigan;

c. Civil fines and money damages, but only against the Individual Defendants, not the Entity Defendants;

d. Any other relief the Court considers appropriate as long as any relief ordered against the Entity Defendants would not constitute a "claim' under the Bankruptcy Code.


2. The Western District Action

The named Defendants in this action are:

Lee Mueller
Boyce Michigan, LLC
Edenville Hydro Property, LLC
Boyce Hydro Power, LLC
Boyce Hydro, LLC
WD Boyce Trust 2350
WD Boyce Trust 3646
WD Boyce Trust 3650

The original request for relief stated:

a. A money judgment exceeding $25,000;

7

  b. A declaration that Defendants violated Parts 17, 31, 301, 303, 315, 401, and 487 of the NREPA, as well as the common law doctrines of conversion, public nuisance, and unjust enrichment;

  c. Civil fines;

  d. A declaration that Defendants' violations of the common law and NREPA have created an ongoing public nuisance and an order requiring the abatement of the public nuisance;

  e. A declaration that Defendants have been unjustly enriched by being temporarily relieved of their obligations to address the public harms they have a duty to address, and an order requiring Defendants to reimburse the State the expenses the State has made to fulfill the duty owed by Defendants;

  f. An order requiring Defendants to restore and repair the damage they caused;

  g. The relief authorized by MCL 324.1704, MCL 324.3115, MCL 324.30112, MCL 324.30316, and MCL 324.31525;

  h. An order reimbursing the State's enforcement expenses, including litigation expenses and attorney's fees;

  i. Any other relief the Court considers appropriate.

The Amended Complaint restated the requested relief to the following:

  As explained above, Plaintiffs seek the following:

  a. A declaratory judgment finding that Defendants violated the Natural Resources and Environmental Protection Act and adjudicating the impact of Defendants' unlawful actions on Michigan's natural resources and the public trust in those resources;

  b. The orders described above against Mr. Mueller only;

  c. An injunction forbidding Defendants from violating the law in the future to the extent any Defendants continue to or plan to operate in Michigan;

  d. Civil fines and money damages, but only against Mr. Mueller, not the Entity Defendants;

  e. Any other relief the Court considers appropriate as long as any relief ordered against the Entity Defendants would not constitute a "claim" under the Bankruptcy Code.

8

I.   Michigan Court of Claims Action

Numerous Flood Survivors filed an action with the Michigan Court of Claims against the DNR and EGLE. These claimants assert the Defendants did not take timely and proper action to avoid the May 2020 events. The Defendants sought summary dismissal of this action, but that request was denied. If the claimants are successful in the Court of Claims Action, the DNR and EGLE would be responsible for millions of dollars of damages. The Court of Claims Action remains pending.

<u>Arguments of the Parties</u>

As developed from oral arguments, the parties and their arguments are as follows:

A.   Liquidating Trustee

Mr. Wolfson argues the Plan and Trust completely control the parties and prohibit the DNR and EGLE from proceeding in the Ingham County Action and the Western District Action except for a narrow interpretation of the enforcement of the police powers. Also, practically, the liquidating nature of the Plan, the termination of any business of the Debtors and their related entities, and the low likelihood of any entity to return to a pre-May 2020 business all point to the lack of any need to prohibit any business activity by the exercise of the police powers of the DNR and EGLE.

B.   Flood Survivor Claimants

Numerous flood survivors who filed claims joined the Liquidating Trustee's request. Additionally, they argue that the DNR and EGLE are using the Ingham County Action and the Western District Action as a means to get a judicial determination that others caused the May 2020 flood and, in turn, use that determination as a defense to pending actions by the Flood Survivor Claimants and others against the State of Michigan, the DNR and EGLE. These arguments raised

the specter of an unintended consequence of defeating otherwise possible legitimate claims without the effected parties, such as the flood survivor claimants, having a full and complete court hearing.

Notably, certain counsel argued that if the DNR and EGLE were solely interested in enforcing police powers, a concise statement by the State of Michigan, the DNR and EGLE that a determination in the Ingham County Action or the Western District Action would have no legal effect or implication in other actions is appropriate and addresses their concerns.

C.   The State of Michigan, the DNR and EGLE

These parties objected to the Liquidating Trustee's Motion and argue that while the Plan and Trust language were agreed to be applicable, the Reservation of Rights language allows continuation of the Ingham County Action and the Western District Action. Moreover, the amended complaints in each action were more closely tailored to narrow the request for relief to specific police powers.

As for the suggestion of counsel for the Flood Survivor Claimants that a concise statement of the effect on any determination in the Ingham County Action or the Western District Action, counsel for the DNR and EGLE declined to accept this suggestion, indicating as late as August 11, 2021 that the State of Michigan was not willing to surrender some potential defense in the future.

Analysis

A.   Introduction and Overview

A determination of the Liquidating Trustee's motion turns on the definition of a police power and the application to the specific facts in this case. The DNR and EGLE are correct that the Plan specifically reserved the rights of the DNR and EGLE to enforce the police powers entrusted to each department. The Bankruptcy Code acknowledges those rights and this Court

10

20-21214-dob    Doc 616    Filed 10/08/21    Entered 10/08/21 11:34:56    Page 10 of 16

would expect the parties to agree to nothing less. The application of the concept of police powers, however, is not as clear.

The Court relies on *Chao v. Hospital Staffing Services, Inc.,* 270 F.3d 374 (2001) for guidance. In *Chao*, the Sixth Circuit articulated two tests to apply to determine whether a police power is in issue: the pecuniary purpose test and the public policy test. *Id.* 385. As stated in *Chao*

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

*Id*. at 385-86 (citing *Word v. Commerce Oil Co.* (*In re Commerce Oil Co.*)), 847 F.2d 291, 295 (6th Cir. 1988)

As for the public policy test, *Chao* instructs that Congress has declared that the Bankruptcy Code yields to state and federal governmental interests in perceiving compliance with certain aspects of those authorities' respective regulatory and police powers. *Id.* at 385 (citing *Midtlantic Nat'l Bank. v. New Jersey Dept. of Envt'l. Prot.,* 474 U.S. 494, 502 (1986)). Or, as the *Chao* Court observed:

> However, when the action incidentally serves public interest but more substantially adjudicates private rights, courts should regard the suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-à-vis other creditors of the estate, contrary to the Bankruptcy Code's priorities.
>
> . . .
>
> As the district court aptly put it, "[p]ursuant to these complementary tests, an action will only be exempt from the automatic stay of the Bankruptcy Code if the action has been instituted to effectuate the public policy goals of the governmental entity,

as opposed to actions instituted to protect the entity's pecuniary interest in the debtor's property or to adjudicate private rights.

*Id.* at 386.

The last quote does place the procedural background of *Chao* in a different posture than the instant case. In *Chao*, the Sixth Circuit had to address the applicability of the automatic stay under Section 362. Here, a plan has been confirmed. In both instances, the use of police powers is dispositive, so *Chao* is applicable and instructive.

B.  Analysis of Pecuniary Interest Test

*Chao* and *Commerce Oil* draw a line between proceedings related primarily to public safety and proceedings that adjudicate private rights. The former is not stayed; the latter is stayed.

Both the Ingham County Action and the Western District Action recite and rely on various state and federal environmental statutes and laws. These statues and laws are in place to protect the public safety. Moreover, the relief requested in each action was modified to attempt to narrow and tailor the scope of each action.

For example, in the Ingham County Action, the DNR and EGLE deleted the request for a money judgment exceeding $25,000, narrowed the request of civil fines and damages to only Individual Defendants, and focused any other relief so long as that relief was not a claim under the Bankruptcy Code. What is left is a request for declaratory judgment as to all Defendants who violated the Natural Resources and Environmental Protection Act, an adjudication of the impact of Defendants' unlawful actions on Michigan's natural resources and the public trust in those resources and an injunction forbidding Defendants from violating the law in the future to the extent any Defendant continues to or plans to operate in Michigan.

The last request for relief may be routine in these actions, but it strikes this Court as unusual. The Plan, the Trust, and every action by the Debtor and related entities in this Court lead

to only once conclusion: Anyone or anything connected to the Debtor will not be operating a dam or like enterprise in Michigan again. The Liquidating Trustee's charge is to liquidate assets, not operate a business. The Debtors cannot operate because each lack assets or money to operate. To the extent any entity within this Court's jurisdiction could or may operate a dam, the existing orders of this Court, culminating in the Plan, give the DNR and EGLE that relief.

Initially, the remaining requests for relief appear all within the police powers of the DNR and EGLE and appear to fit within the Reservation of Rights clause of the Plan. The Flood Survivor Claimants, however, pose a question that impacts this preliminary conclusion. They argue that a determination in the Ingham County Action or the Western District Action that places liability on the Defendants, which by definition could reach the legal conclusion of determining cause, could be used against them as a defense in the Court of Claims Action. Their suggested solution is to have specific language precluding that possibility. At oral argument, counsel for the State of Michigan, the DNR, and EGLE declined to consider this proposal.

This declination is disturbing and causes the Court to reconsider and question the actions of the State of Michigan, the DNR, and EGLE.

As stated by counsel for the DNR and EGLE, the State of Michigan would not surrender a potential defense in the future. This statement frames the position of the State of Michigan differently. The defense is undoubtedly to the Court of Claims Action which in turn is an action for money damages against the State of Michigan. The pecuniary interest of the State of Michigan and the pursuit of private rights are certainly in issue. As such, the Ingham County Action and the Western District Action, while clothed in police power language, could be an effort to blunt and defeat monetary claims in the Court of Claims Action. With this significant concern, the Court is not convinced the Ingham County Action or the Western District Action are exercises of police

power under *Chao* or *Commerce Oil*. Moreover, the Reservation of Rights in the Plan does not allow these actions to continue because each is not a sole exercise of police power.

The Court fully recognizes and supports the exercise of the police powers here, but the refusal to agree to the request of the Flood Survivor Claimants, which takes away any possibility that the State's pecuniary interest is at play, causes this Court to conclude the Ingham County Action is a disguised effort to adjudicate private rights and therefore not a police power.

The same is true for the Western District Action. Again, a preliminary review shows an exercise of police power to protect public safety, but there is the distinct possibility that private rights will be adjudicated. Likewise, the Court concludes that without the limitations suggested by the Flood Survivor Claimants, the Western District Action cannot continue.

C.  Public Policy Analysis

Once the Court completes its Pecuniary Purpose Analysis, the individual public interest served in both actions is outweighed by the significant possibility of adjudication of public rights. More pointedly, the request for injunctive relief in both actions seems unnecessary. This Court cannot uncover any fact to suggest the Debtors, any related entity, or any individual connected with the Debtors can, will, or want to operate a dam in Michigan.

Taken one step further, the arguments of the Flood Survivor Claimants do fit within the *Chao* language that a successful outcome for the State of Michigan, the DNR, or EGLE in either action could result in a pecuniary advantage for those entities vis-à-vis other creditors of the estate. Likewise, this Court concludes that the public policy test results in finding that the Liquidating Trustee's motion should be granted.

D.  Future Action

The Court does not reach its conclusion in this matter easily.  The State of Michigan, the DNR, and EGLE have significant public safety and public interests that must be enforced.  At first blush, the obligations of each entity fit within the police power definition and within the Reservation of Rights, which each negotiated to have included in the Plan.  The concerns of the Liquidating Trustee and the Flood Survivor Claimants cannot be ignored.  While the State of Michigan, the DNR, and EGLE have diligently attempted to amend the complaints in the Ingham County Action and the Western District Action, a concern that the pecuniary interest of the State of Michigan, the DNR, and EGLE, in the form of a declaratory determination that could be used against others such as the Flood Survivor Claimants, still hangs over this case.  It is that concern that drives this Court's decision.

The concern could be removed if the language suggested by counsel for the Flood Survivor Claimants was utilized.  If so, any chance, however remote, that the declaratory relief sought in the Ingham County Action and the Western District Action would be a pecuniary matter, is removed. In turn, the State of Michigan, the DNR, and EGLE could continue each action.

The Court has reflected on the position of the parties, and in particular, the State of Michigan, the DNR and EGLE.  The Court would allow the Ingham County Action and the Western District Action to continue if the police powers of the State of Michigan were solely at issue.  But that does not appear to be the case.  The Court recognizes that it may have misunderstood the arguments of the State of Michigan or that serious consideration of the possibility of narrowing the effect of determination in the Court of Claims Action did not occur. Also, the Flood Survivor Claimants may be asking for too much; just as the State of Michigan should not be able to use a determination in the Ingham County Action or the Western District

15

Action as a sword or shield against claims against it, it cannot be prohibited from arguing the facts that underlie and are common in all three actions. It strikes the Court that the talented and skilled counsel in this case should be able to craft language that preserves the rights of all, but lets the State of Michigan, the DNR and EGLE exercise its legitimate police powers.

Accordingly, the Court will hold a status conference regarding these matters on *Wednesday, November 3, 2021 at 1:30 pm* for the purpose of having counsel for all interested parties explore the possibility of agreeing to language that satisfies the concerns articulated in this Opinion. Counsel are directed to meet and confer by October 29, 2021.

The Court defers entry of an order until after the status conference date.

**Not for Publication**

**Signed on October 8, 2021**

/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge