UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

BOYCE HYDRO, LLC, et al.

Debtors.[1]

_____/

Case No. 20-21214-dob
Chapter 11 Proceeding
Hon. Daniel S. Opperman

SUPPLEMENTAL OPINION REGARDING LIQUIDATING TRUSTEE'S MOTION TO ENFORCE ORDER CONFIRMING PLAN AGAINST THE STATE OF MICHIGAN; THE DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY; AND THE DEPARTMENT OF NATURAL RESOURCES

Introduction

On October 8, 2021, the Court entered an Opinion Regarding Liquidating Trustee's Motion to Enforce Order Confirming Plan Against the State of Michigan; the Department of Environment, Great Lakes, and Energy; and the Department of Natural Resources ("State of Michigan, EGLE and DNR", respectively) and by way of an Order of even date directed counsel for the parties to meet and confer regarding language that could allow the State of Michigan, the DNR, and EGLE to continue certain actions in the Ingham County Circuit Court and the District Court for the Western District of Michigan. For reasons stated in a report filed by the DNR and EGLE and another report filed by various creditors, the parties were not able to agree on acceptable language. The Court heard oral arguments on November 3, 2021 and took this matter under advisement. The Court issues this Opinion as a continuation and supplement to its October 8, 2021 Opinion.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: (i) Boyce Hydro, LLC (6694), Case No. 20-21214 and (ii) Boyce Hydro Power, LLC (3034), Case No. 20-21215.

1

Statement of Position of the Parties

The numerous creditors, primarily flood survivors, offer the following language:

> As used herein, "Litigation" means, collectively, *People of State of Michigan, et al. v. Lee Mueller, Boyce Michigan, LLC, Edenville Hydro Property, Boyce Hydro Power LLC, Boyce Hydro, LLC, WD Boyce Trust 2350, WD Boyce Trust 3649, WD Boyce Trust 3650, Stephen B. Hultberg, and Michele G. Mueller*, MIWD Case No. 20-cv-00520, which has now been remanded to Ingham County Circuit Court, Case No. 20-255-CE, commenced on April 30, 2020; and *Michigan Department of Environment, Great Lakes, and Energy et al v. Lee Mueller, Boyce Michigan, LLC, Edenville Hydro Property, LLC, Boyce Hydro Power LLC, Boyce Hydro, LLC, WD Boyce Trust 2350, WD Boyce Trust 3649, WD Boyce Trust 3650*, MIWD Case No. 20-00528, commenced on June 9, 2020. As used herein, "State" means, collectively, The State of Michigan, The Department of Environment, Great Lakes and Energy, and the Department of Natural Resources.
>
> Neither the Litigation, nor any other actions brought by or on behalf of the State or any other governmental entity asserting police or regulatory powers, has or will have preclusive or precedential effect in any litigation brought by or on behalf of any flood victims.

(E.C.F. No. 627, Exhibit E).

The State of Michigan, the DNR, and EGLE state in attachments to its report the following:

2. The proposed language uses legal terms of art – "preclusive effect" and "precedential effect" – that do not have any apparent application to this situation.

   a. How could a ruling either in the pre-failure enforcement action in Ingham County or the post-failure enforcement action in federal district court have a "preclusive effect" on your lawsuit in the Court of Claims if your clients are not parties in either of those enforcement actions? Here is the settled law of "preclusive effect" in Michigan:

   "The preclusion doctrines of res judicata and collateral estoppel "serve an important function in resolving disputes by imposing a state of finality to litigation where **the same parties** have previously had a full and fair opportunity to adjudicate their claims." *Nummer v. Dep't of Treasury*, 448 Mich. 534, 541, 533 N.W.2d 250 (1995). Res judicata applies if "(1) the prior action was decided on the merits, (2) **both actions involve the same parties or their privies**, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. Michigan*, 470 Mich. 105, 121, 680

        N.W.2d 386 (2004). "Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) **the same parties** must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682-684, 677 N.W.2d 843 (2004) (quotation remarks, citation, and brackets omitted)." William Beaumont Hosp. v. Wass, 315 Mich. App. 392, 398 (2016).

    b.    As for "precedential effect," there are two sources of precedent under Michigan law: published opinions of the Court of Appeals, MCR 7.215(C), and majority decisions from the Michigan Supreme Court, *People v. Mitchell*, 428 Mich. 364, 369 (1987). A ruling from a circuit court (pre-failure enforcement action) or a federal court (post-failure enforcement action) doesn't fall into either of those two categories. Even if they did, I don't see how the State would have the authority to essentially enter into a contract with your clients that could determine what Michigan's judicial branch considers "precedential." Those important legal concerns aside, as a practical matter, what "precedential effect" do you think the two enforcement actions could possibly have on your Court of Claims lawsuits?

(E.C.F. No. 625-1, pp. 5-6) (emphasis in original).

At the November 3, 2021 hearing, counsel for the State of Michigan, the DNR, and EGLE reiterated the concepts stated in its report; emphasizing the point that the creditors' concerns were not well articulated and that any decision in the Ingham County Action or the Western District Action could not possibly be binding on them. Accordingly, the language offered by the creditors is an unnecessary statement of the law which the State of Michigan does not typically agree to include in any pleading or agreement.

In partial response, counsel for creditors point to comments of counsel for the DNR and EGLE that each was "not willing to surrender a protentional defense in the future." This comment leads to the conclusion that the State of Michigan, the DNR, and EGLE do see a possibility that a defense exists in the Court of Claims action against each.

Analysis

Except for the stated concerns of the creditors that appears reinforced by counsel for the State of Michigan, the DNR, and EGLE that those entities would not surrender a defense, there does not appear to be a well founded basis that any of these entities could use a finding in the Ingham County Action or the Western District Action. The authorities cited by the State of Michigan appear sound and binding. The Court does not understand why the State of Michigan, the DNR, and EGLE are reluctant to agree to the language suggested by the creditors. It is truly unfortunate that the State of Michigan, the DNR, and EGLE are reluctant to restate a principle of law to give comfort to the very residents each is duty bound to serve and protect. Indeed, a cynic would further question whether the State of Michigan, the DNR, and EGLE are truly solely interested in exercising the police powers granted to each, or whether there is a pecuniary reason why each wish to go forward in the Ingham County Action and the Western District Action.

These matters should not be delayed any longer. One side thinks the proffered language is unnecessary because that is the law in Michigan; the other side wants the statement of law as added assurance, especially given their experience after May, 2020. Three principles allow this Court to resolve this issue and in turn deny the Liquidating Trustee's Motion.

First, the Court accepts the position of the State of Michigan, the DNR, and EGLE that any decision in the Ingham County Action or the Western District Action has no preclusive effect or precedential effect in any action brought by or on behalf of any flood survivor for all the reasons stated previously in this Opinion. This is an accurate statement of law which this Court adopts and relies on in its Opinion.

Second, Judicial Estoppel prohibits the State of Michigan, the DNR, and EGLE from taking the actions feared by the flood survivors.

"Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1217-18 (6th Cir. 1990) (citation omitted). "Judicial estoppel, however, should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004), *quoted in White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010).

"In order to invoke judicial estoppel a party must show [i] that the opponent took a contrary position under oath in a prior proceeding and [ii] that the prior position was accepted by the court." *Teledyne Indus.*, 911 F.2d at 1218 (6th Cir. 2002). A third factor courts have examined is whether the "'conduct amount[s] to nothing more than mistake or inadvertence.'" *White,* 617 F.3d at 476.

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.
>
> Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment. Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion.
>
> . . . [S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of

5

> inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
>
> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) (internal quotation marks and citations omitted); *see also Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 624 (6th Cir. 2005) (relying on *New Hampshire v. Maine* and noting that "the second factor-that a court accepted the party's initial position-appears to be significant").

The Sixth Circuit Court of Appeals has examined the following circumstances in determining whether the conduct was the result of mistake or inadvertence, which may result in the application of judicial estoppel being inappropriate: (1) "the debtor lacks knowledge of the factual basis of the undisclosed claims"; (2) "the debtor has no motive for concealment"; and (3) "the absence of bad faith." *White*, 617 F.3d at 476 (citing *Browning v. Levy*, 283 F.3d 761, 776) (6th Cir. 2002).

In this case, the State of Michigan, the DNR, and EGLE have repeatedly represented that the Ingham County Action and the Western District Action can have no effect on the flood survivors and this Court has accepted that position. Judicial Estoppel precludes each entity from later taking a contrary position, especially if that contradictory position is to the detriment of the flood survivors. The State of Michigan, the DNR, or EGLE have not proceeded and taken its current position by mistake or inadvertence. This issue has been fully developed and argued in the numerous hearings held by the Court, and counsel for the State of Michigan, the DNR, and

6

20-21214-dob    Doc 631    Filed 11/22/21    Entered 11/22/21 16:22:31    Page 6 of 8

EGLE has been clear. Finally, as stated by counsel for the State of Michigan, the DNR, and EGLE, Judicial Estoppel applies at the state or federal level.

Third, the terms of the confirmed plan lead to this conclusion. Creditors are enjoined from taking actions against the Debtors, its related entities, and other creditors. (E.C.F. No. 481, Article X, Sections C-F, of Debtor's Fourth Modified Joint Consolidated Plan of Liquidation). The State of Michigan, the DNR, and EGLE are granted a limited exception to this injunction in that each can enforce its police powers. But police power enforcement does not include actions that invoke the pecuniary interest of the State of Michigan, the DNR, or EGLE. If a pecuniary interest does come to the surface, all of these entities are enjoined by the plan. If any entity seeks to use a decision in the Ingham County Action or the Western District Action against the flood survivors or other creditors, the pecuniary interest has subsumed the police powers of the State of Michigan, the DNR, and EGLE. Correspondingly, if that event happens, any affected creditor may petition this Court for relief. This Court can then have a concrete set of facts to address.

In denying the Motion of the Liquidating Trustee, this Court recognizes the important police powers reserved to the State of Michigan, the DNR, and EGLE, but yet provides solace to the flood survivors. To the extent the interests of these groups coincide in the exercise of police powers, the Ingham County Action and the Western District Action should proceed. But if the State of Michigan, the DNR, and EGLE act so as to raise a defense or affirmative action based on a determination by the Ingham County Action or the Western District Action, each is prohibited for the reasons stated by its counsel and in this Opinion.

For the reasons stated in this Opinion, the Motion of the Liquidating Trustee is Denied. The Court will enter an order consistent with this Opinion.

**Signed on November 22, 2021**



/s/ Daniel S. Opperman

Daniel S. Opperman
United States Bankruptcy Judge