UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

    BOYCE HYDRO, LLC, et al.

    Debtors.[1]

_____/

Case No. 20-21214-dob
Chapter 11 Proceeding
Hon. Daniel S. Opperman

## OPINION DENYING MOTION OF LEE W. MUELLER TO ENFORCE NOVEMBER 22, 2021 ORDER OF THE COURT AND FOURTH MODIFIED LIQUIDATION PLAN

Lee W. Mueller, a creditor and former manager and member of the Debtors, seeks to have this Court enforce provisions of the Debtor's Fourth Modified Plan ("Plan") and the November 22, 2021 Order Denying Liquidating Trustee's Motion To Enforce Order Confirming Plan Against the State of Michigan, the Department of Environment, Great Lakes, and Energy, and the Department of Natural Resources ("State of Michigan, EGLE and DNR" respectively). These entities, along with the Liquidating Trustee and numerous flood survivors (the latter being self-titled "Mass Coalition") either directly oppose or do not support Mr. Mueller's request. For the reasons stated in the Opinion, the Court denies the Motion of Mr. Mueller.

### Jurisdiction

This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334 and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: (i) Boyce Hydro, LLC (6694), Case No. 20-21214 and (ii) Boyce Hydro Power, LLC (3034), Case No. 20-21215.

1

Facts

The instant Motion asks this Court to order that:

The State of Michigan, EGLE and DNR shall be, and hereby are enjoined and judicially estopped from employing the doctrine of collateral estoppel, even defensively, against the flood victims in the Michigan Court of Claims based on the Western District Action discovery sanctions order.

The State of Michigan, EGLE and DNR shall be, and hereby are subject to this Court's reimposition of the automatic stay, pursuant to 11 U.S.C. § 362, in both the Western District Action and in the Ingham County Circuit Court Action, if they individually and/or collectively continue to primarily pursue their/its pecuniary interests in these venues at the expense of the flood victims.

The State of Michigan, EGL and DNR shall be, and hereby are warned that they will be subject individually and/or collectively to this Court's imposition of penalties and/or sanctions, including payment of all flood victim attorney fees and costs, if they individually and/or collectively continue(s) to contravene this Court's Orders of November 22, 2021, and the Plan.

(Proposed order, Motion of Lee Mueller, Doc. No. 727-16).

To put this request in perspective, a recap of previous facts stated by the Court in its previous Opinions, updated after November 2021, is needed.

A.    Pre-Bankruptcy Events

The Debtors and related entities owned and operated four dams in Gladwin and Midland Counties. These dams created or enhanced four lakes along the Tittabawassee and Tobacco Rivers and generated electricity. These dams required significant and substantial repairs and maintenance which the Debtors could not afford. The DNR and EGLE assumed regulatory authority after the Federal Energy Regulatory Commission ("FERC") withdrew its approval.

The DNR and EGLE investigated the Debtors' operations and noted that lake levels were lowered and alleged that certain aquatic wildlife was endangered. A series of lawsuits were filed in state court requesting the restoration of lake levels. The Debtors increased the lake levels, but reduced the level in the winter months. The DNR performed aquatic wildlife surveys and

2

20-21214-dob   Doc 776   Filed 12/09/22   Entered 12/09/22 11:18:24   Page 2 of 13

concluded significant numbers of freshwater mussels were killed with a particular deadly effect on snuffbox mussels, a state and federal endangered species. The DNR and EGLE filed a complaint in the Ingham County Circuit Court seeking redress for these losses and damages ("Ingham County Action").

The Debtors and related entities began to raise the lake levels in spring 2020. By May 2020, the levels returned to the traditional levels as approved by the state court. On May 19, 2020, the Edenville Dam failed, followed by a partial failure of the Sanford Dam. As a result, the downriver communities of the Village of Sanford, City of Midland, and adjoining areas were flooded, and thousands of humans displaced and substantial property damage was sustained.

The DNR and EGLE turned to court action, this time in the District Court for the Western District of Michigan, claiming that the Debtors, Lee Mueller, Boyce Michigan, LLC, WD Boyce Trust 2350, WD Boyce Trust 3649 and Boyce Trust 3650 violated various federal and state environmental laws under the Michigan Natural Resources and Environmental Protection Act, M.C.L. § 324.101 *et seq.* ("Western District Action").

To complete the summary of lawsuits, many flood survivors, including the Mass Coalition, filed complaints in various state and federal courts. Because the claims are against the State of Michigan, DNR and EGLE, these cases are now before the Michigan Court of Claims. That Court has issued opinions that are now on appeal to the Michigan Court of Appeals, and the Court of Claims actions are stayed pending decisions from the Michigan Court of Appeals.

B.  Bankruptcy Activity

The Debtors filed their Chapter 11 petition on July 31, 2020, and the Court held numerous hearings and conferences by telephone throughout 2020. On February 25, 2021, this Court entered a Non-Consensual Order Confirming Debtor's Fourth Modified Joint

Consolidated Chapter 11 Plan of Liquidation. This Order approved the creation of the Boyce Hydro Liquidating Trust and appointed Scott Wolfson as the Liquidating Trustee.

The Plan allowed Mr. Wolfson time to sell, settle, or file a legal proceeding to pursue certain causes of action. He was unable to do so, and on June 21, 2022, he filed a Notice Regarding Transfer of Unpursued Claims Under Article VII, Section Q of the Plan, effectively abandoning these interests under 11 U.S.C. § 554 to beneficiaries of the Boyce Trusts, which includes Mr. Mueller.

The State of Michigan, DNR and EGLE renewed their activities in the Ingham County Action and Western District Action. This prompted Mr. Wolfson to seek an Order from this Court staying each entity. After briefing and oral arguments, this Court issued an Opinion on November 22, 2021, delineating the extent that the State of Michigan, DNR and EGLE could proceed. As the November 22, 2021 Order stated, in relevant part:

> IT IS FURTHER ORDERED that, as stated by Counsel for the State of Michigan; the Department of Environment, Great Lakes, and Energy; and the Department of Natural Resources, and as described in the contemporaneous Opinion of this Court, any decision in the Ingham County Action or the Western District Action as described in the contemporaneous Opinion of this Court shall have no preclusive or precedential effect in any action brought by or on behalf of any flood survivor;
>
> IT IS FURTHER ORDERED that, as described in the contemporaneous Opinion of this Court, the State of Michigan; the Department of Environment, Great Lakes, and Energy; and the Department of Natural Resources, are barred by judicial estoppel from taking positions regarding the flood survivors contrary to those it has taken in this bankruptcy proceeding;
>
> IT IS FURTHER ORDERED that pursuant to the confirmed Fourth Modified Joint Consolidated Plan of Liquidation, the State of Michigan; the Department of Environment, Great Lakes, and Energy; and the Department of Natural Resources, are limited to enforcement of police powers and enforcement of pecuniary interests by these entities are enjoined.

The State of Michigan, DNR and EGLE, Mr. Mueller and the Liquidating Trustee all returned to the Ingham County Action and the Western District Action. Usual pretrial activity ensued, including discovery. Mr. Mueller, being in dire financial condition, struggled to comply with the discovery requests placed on him. The DNR and EGLE pursued their rights, ultimately resulting in an Opinion and Order in the Western District Action:

> The Court will, in its discretion, impose sanctions on Defendant Mueller pursuant to Rule 37(b)(2)(A). With regard to Plaintiffs' first set of interrogatories/RFPs, Defendant Mueller missed his response deadline three times before the Court finally ordered him to produce his responses "immediately" (ECF No. 132). His responses to these discovery requests were originally due on March 30, 2022, and as of the date of this order, about six months later, it appears that Defendant Mueller has still failed to produce complete responses to Plaintiffs' first RFPs (*see* ECF Nos. 138, 148) (explaining that Defendant Mueller has failed to produce at least 80% of the requested documents that Plaintiffs sought in their first RFPs). In the Court's judgment, it is appropriate to sanction Defendant Mueller for his repeated disregard of his discovery obligations and this Court's orders.
>
> Rule 37(b)(2)(A) explains that sanctions awarded under this rule "may include" seven different types of sanctions. Of these potential sanctions, the first option is for the Court to "direct[] that all matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A). Plaintiffs ask that this Court award such a sanction and deem their proposed established facts (*see* ECF No. 108-7) as true.
>
> On the other hand, Defendant Mueller argues that, if the Court chooses to impose sanctions upon him, the Court should award monetary sanctions rather than accepting Plaintiffs' proposed established facts as true. He asserts that, the first time courts sanction a party, they typically award monetary sanctions, and if this Court instead awarded nonmonetary sanctions, the Court would "skip[] over monetary sanctions" (ECF No. 147 at PageID.4685).
>
> Although Defendant Mueller is correct that this Court has not imposed any monetary sanctions on him in this matter, the Court finds that—based on Defendant Mueller's own assertions—monetary sanctions would be meaningless. Defendant Mueller has made it a point to inform this Court that this financial circumstances are "dire" (ECF No. 124 at PageID.4307), and that he cannot even afford to pay his attorney, who is working on a pro bono basis (*see* ECF Nos. 89-1, 102, 102-1, 103, 103-1, 124, 124-1, 126, 144, 149) (showing all the instances in which Defendant Mueller's attorney notified the Court that he is working on a pro

bono basis). According to Defendant Mueller, he "has no other means of income, other than social security income" (ECF No. 144 at PageID.4630). For purposes of this order and the record to date the Court will accept Defendant Mueller's assertions that his financial situation is "dire," and therefore, the Court finds that it would be pointless to impose monetary sanctions upon Defendant Mueller. The Court also will not engage in a "payment plan" discussion. As such the Court finds that the nonmonetary sanction of accepting Plaintiffs' proposed established facts (except Fat #8), as permitted by Rule 37(b)(2)(A), is an appropriate sanction for Defendant Mueller's disregard for this Court's May 17 discovery order and all subsequent orders.

The Court reviewed Plaintiffs' proposed established facts (ECF No. 108-7). Because this Court is sanctioning Defendant Mueller for his failure to timely respond to Plaintiffs' first set of interrogatories/RFPs, the Court finds that it is appropriate to accept only the proposed facts that were within the scope of the discovery that the Court ordered Defendant Mueller to produce in the May 17 order. Upon the Court's review, all proposed established facts, except Fact #8, are within the scope of the May 17 order. Fact #8 specifically references a conclusion of the Independent Forensic Team ("IFT"). Although Plaintiffs sought the communications between the IFT and Defendant Mueller in the RFP#1, the Court did not order Defendant Mueller to produce this documentation in its May 17 order; rather, it ordered him to produce this documentation after it considered Defendant Mueller's motion for a protective order (see ECF No. 136). Therefore, except for Fact #8, the Court finds that Plaintiffs' proposed established facts relate directly to the discovery that the Court ordered Defendant Mueller to produce in its May 17 order. The Court will deem Facts #1 through #7 as true (ECF No. 108-7 at PageID.4232-33), as they relate to Defendants Lee W. Mueller and Edenville Hydro Property, LLC, for the remainder of this litigation. They are not deemed as true as to any of the other defendants in this matter (see ECF No. 144 at PageID.4664).

Additionally, although the Court deems many of Plaintiffs' proposed established facts as true, Defendant Mueller is not relieved of his discovery obligations regarding Plaintiffs' first set of interrogatories/RFPs or his discovery obligations in the future. To the extent that Defendant Mueller still owes Plaintiffs the documents that they sought in their first RFPs—including all the documents that Defendant Mueller identified on his attorney-client privilege log—the Court reminds Defendant Mueller that, on July 13, he was ordered to produce those documents "immediately." If he has yet to provide Plaintiffs with all the documents they requested in their first RFPs, the Court trusts that Defendant Mueller will do so immediately.

Finally, Plaintiffs also seek sanctions pursuant to Rule 37(c)(1) for Defendant Mueller's failure to timely produce his initial disclosures. Rule 37(c)(1) states:

> (c) Failure to Disclose, to Supplement and Earlier Response, or to Admit.
>> (1) *Failure to Disclose or Supplement*. If a party fails to provide information or identify a witness as required by Rule 26(a) or (c), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>>> (B) may inform the jury of the party's failure; and
>>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).
>
> The Court finds that imposing sanctions under Rule 37(c)(1) is not appropriate. Defendant Mueller eventually did provide his initial disclosures—albeit a very tardy three months late—so he has not "fail[ed] to provide" his initial disclosures, as required by Rule 37(c)(1). At this time, the Court finds that the imposed sanctions under Rule 37(b)(2)(A) are sufficient. But if Defendant Mueller continues to disregard his discovery obligations in the future, the Court will not hesitate to consider additional appropriate sanctions.
>
> (hereinafter "Western District Court Order")

(Western District Action, Case No. 20-cv-00528, Doc. No. 156, pp. 5-9) (footnote omitted).

This Order prompts Mr. Mueller to file the instant Motion with this Court. The Court heard oral arguments on November 18, 2022 and took the matter under advisement.

<u>Summary of Arguments of the Parties</u>

A.    Mr. Mueller

Mr. Mueller argues that the Western District Court Order will be used to leverage him against the flood survivors beyond the view of this Court. The facts as admitted in the Western District Court Order could be potentially entitled to preclusive effects in other courts, including the actions by the flood survivors that pend in the Michigan Court of Claims. His argument continues to detail the numerous discovery requests directed to him by the DNR and EGLE when all knew many of the documents in question were in the hands of the Liquidating Trustee, who

has made these documents available, coupled with the scarce financial and legal resources available to Mr. Mueller. Moreover, Mr. Mueller outlined subsequent news releases and reports that indicate the Western District Court Order is likely to become relevant in ongoing lawsuits against the State of Michigan over damages caused by the flood.

At oral argument, Mr. Mueller also addressed the arguments of the DNR and EGLE that he lacked standing to bring the motion. As he argued, he demonstrates he has an injury in fact because he is deprived of the right to present facts at the trial of the Western District Court case and that unusual circumstances exist because he has assumed the role of the Debtor in the Western District Action, thus meeting the requirement of constitutional and statutory standing as argued by counsel for Mr. Mueller at the November 18, 2022 hearing.[2]

B.   The DNR and EGLE

The DNR and EGLE question whether Mr. Mueller has standing to raise the issues in his Motion because neither the terms of the plan or the November 22, 2021 Order directly impact him. Each agency also argues that it has not obtained a judgment in either the Western District Action or Ingham County Action and that the Court of Claims actions are stayed pending appeal in the Michigan Court of Appeals. As stated by counsel for the DNR and EGLE at oral argument, neither the State, DNR, or EGLE intend to use the Western District Court Order in any other action. At the November 18, 2022 hearing, counsel for the DNR and EGLE stated: "We have no plan of trying to invoke any of the State of Michigan's preclusive doctrines in the State Court proceeding." (Transcript of November 18, 2022 hearing, Page 39).

---

[2] Counsel for Mr. Mueller referred to numerous cases at the November 18, 2022 hearing on this point, which were not previously cited in Mr. Mueller's brief. Full citations were not given on the record at this hearing, nor was a supplementary brief filed. Because the Court finds that Mr. Mueller has standing, an examination of these cases is not necessary.

Finally, the DNR and EGLE argue that the discovery issues in the Western District Action were all properly resolved consistent with Federal Rule of Civil Procedure 37, that the Western District Court Order was carefully tailored to affect Mr. Mueller only, and that any review of the Western District Court Order is the providence of the Sixth Circuit Court of Appeals or the United States Supreme Court.

C.  The Mass Coalition

Counsel for the Mass Coalition initially pointed out that none of the parties of the Mass Coalition are a party in the Western District Action or the Ingham County Action and that the Western District Court Order was solely against Mr. Mueller and Edenville Hydro Property, LLC, and not to be construed against any other party.[3] The Mass Coalition did express a concern that the State of Michigan, DNR and EGLE continue to refuse to agree or acquiesce that it would not use any decision in the Ingham County Action or Western District Action against the flood survivors. The last point may or may not have been addressed to the satisfaction of all by counsel for the DNR and EGLE at the November 18, 2022 oral argument. Regardless, counsel for the Mass Coalition assured the Court he would immediately file a motion for relief if he believed the November 22, 2021 Order was violated.

D.  The Liquidating Trustee

Mr. Wolfson filed a limited objection to note that the Western District Court Order was directed only against Mr. Mueller and Edenville Hydro Property, LLC for the remainder of the litigation and not any other defendant. He also pointed out that there was no evidence that the State of Michigan, DNR or EGLE have argued that the facts in the Western District Court Order have any preclusive effect against the flood survivors. His objection also notes that non-

---

[3] Counsel for Mr. Mueller also represented Edenville Hydro Power, LLC in the Western District Action. Even though Edenville Hydro Power, LLC was a subject of the Western District Order, Edenville Hydro Power, LLC is not a substantively consolidated Debtor, and was not impacted by the Plan.

monetary relief sought by the State of Michigan, DNR and EGLE is pointless because the now defunct Boyce entities have no chance of ever operating again and cannot violate any natural resources law. At oral argument, counsel reported that the Liquidating Trustee did provide access to documents held by him and that the process was working. Also, counsel reported that certain causes of action held by the Liquidating Trustee were abandoned by the estate and no longer property of the estate.

## Analysis

I. Standing

The DNR and EGLE correctly point out that Mr. Mueller must have standing under Article III in order to obtain relief from this Court. *Jahn v. Burke (In re Burke)*, 863 F.3d 521, 526 (6th Cir. 2017). This means Mr. Mueller "must have suffered an injury-in-fact, that the injury must have been caused by the [DNR and EGLE], and that the injury must be redressable by a favorable ruling [from this Court]." *Id*. at 526. The DNR and EGLE devote the rest of its arguments to demonstrate why this Court cannot grant relief to Mr. Mueller.

In turn, Mr. Mueller argues that he has suffered an injury in that he is deprived of the right to present facts at the trial of the Western District Action. Moreover, since he has assumed the role of the Debtor and Liquidating Trustee, the unusual circumstances described and required in *In re Johnson*, 548 B.R. 770, 787-88 (Bankr. S.D. Ohio 2016) all give him standing. For added measure, Mr. Mueller argues that an extension of the Western District Court Order could have an impact on the flood survivors and, thus, violate this Court's November 22, 2021 Order.

In order to continue and complete the Court's analysis, the Court now turns to the substance of Mr. Mueller's request.

II. The Effect of the Western District Court Order

The Western District Action was initiated by the State of Michigan, DNR and EGLE to enforce the natural resource and environmental laws, all pursuant to their police powers. On its face, there is no prohibition in the Bankruptcy Code or applicable case law barring the State of Michigan, DNR and EGLE from this action. It is when the pecuniary interest of the State of Michigan, DNR, or EGLE comes into play that this Court can or should examine the actions of these entities. At this time, the Court sees no reason to intervene.

The Western District Action was in the discovery stage. The Liquidating Trustee was and is providing discovery to the DNR and EGLE. Mr. Mueller, facing numerous discovery requests with limited financial and legal resources, was unable to comply with requests directed to him. From approximately April 2022 to September 2022, it appears to this Court that the Western District Court addressed the issues presented to it in a normal and routine manner. The result of this approach was the entry of the Western District Court Order. This Order only affects Mr. Mueller and a non-debtor entity, and no other party. The pursuit of discovery and enforcement of the rights and remedies available under the Federal Rules of Civil Procedure at this stage are only to advance the enforcement of police powers.

The precise language of the Western District Court Order leaves no doubt that it only affects Mr. Mueller and Edenville Hydro Property, LLC and no other entity. The Order also only relates to the remainder of the litigation in the Western District Action. This Order is precise, narrow and tailored to the situation. The only person who reads and interprets otherwise is Mr. Mueller. The State of Michigan, DNR, EGLE, Mass Coalition and Liquidating Trustee do not. At this time, this Court does not see how an order with limitations resulting from the failure to produce discovery impacts others. This point is buttressed by counsel for the State of Michigan,

DNR and EGLE who has repeatedly stated on the record that neither entity intends to use a determination in either the Ingham County Action or Western District Action against the flood survivors. To date, no judgment has been entered in either action, so there is nothing more this Court can or should do at this time. Counsel for these entities has made it clear he understands the Court's November 22, 2021 Order and has no intention of violating that Order.

Additionally, the November 22, 2021 Order of this Court defined a bright line and allowed for methods to allow any party to petition this Court to seek redress. Counsel for the Liquidating Trustee and the Mass Coalition each expressed an ability and willingness to use those avenues if the need arises. To date, the need has not arisen. Also, Mr. Mueller and Edenville Hydro Property, LLC were not protected parties as defined in the Plan, although each could have requested that protection under certain terms. The Plan provided that the Liquidating Trustee retain certain causes of actions that could have been related to or perhaps affected by the Ingham County Action or the Western District Action. By June 2022, however, these assets were abandoned by the Liquidating Trustee and are no longer property of the estate or subject to administration pursuant to the Plan. Parties who are still protected by the Plan, such as the flood survivors, remain so and have ample avenues to seek redress if needed.

Finally, the proper immediate court of review of the Western District Court Order is the Sixth Circuit Court of Appeals. Many of the arguments made by Mr. Mueller are directed to the propriety of the entry of the Western District Court Order. Distilled to its essence, Mr. Mueller details the disparate position of himself with the State of Michigan, DNR and EGLE and laments that he was unable to comply with the discovery requests imposed on him. Whether he is correct, however, is not for this Court to answer. Instead, this Court is tasked with the duty to ensure the Plan is followed and completed and, as part of that process, its November 22, 2021 Order is

12

20-21214-dob    Doc 776    Filed 12/09/22    Entered 12/09/22 11:18:24    Page 12 of 13

followed. Here, neither the Plan or the November 22, 2021 Order compels the Court to grant the Motion of Mr. Mueller.

### Conclusion

For purposes of this Opinion, the Court finds that Mr. Mueller has constitutional and statutory standing to advance this Motion. He has not, however, demonstrated sufficient reasons or a remedy to warrant the granting of his Motion. For the reasons stated in this Opinion, the Motion of Mr. Mueller is denied.

The Court enters an Order consistent with this Opinion.

**Not for Publication**

**Signed on December 9, 2022**

/s/ Daniel S. Opperman

**Daniel S. Opperman**
**United States Bankruptcy Judge**